**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**ATHENS DIVISION**

|  |  |
|---|---|
| GRP-MADISON, LLC; GRP-FRANKLIN, LLC; AND GEORGIA RENEWABLE POWER, LLC, <br><br> Petitioners, <br><br> v. <br><br> AMEC FOSTER WHEELER INDUSTRIAL POWER COMPANY, INC., AMEC FOSTER WHEELER USA CORPORATION, d/b/a WOOD GROUP USA, INC.; AMEC FOSTER WHEELER ENERGIA S.L.U.; and AMEC FOSTER WHEELER PLC, d/b/a WOOD GROUP PLC, <br><br> Defendants. |  |

## PETITION TO COMPEL ARBITRATION

Petitioners GRP-Madison, LLC; GRP-Franklin, LLC; and Georgia Renewable Power, LLC (collectively, "GRP" or "Petitioners"), by and through their undersigned counsel, bring this Petition pursuant to Section 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq*. (1) to compel arbitration of GRP's January 18, 2023 Demand for Arbitration (the "Demand," or "Demand to AFW," attached to the Declaration of Charles S. Korschun as Ex. 1) submitted by GRP against Respondents Amec Foster Wheeler Industrial Power Company, Inc.; Amec Foster Wheeler USA Corporation, d/b/a Wood Group USA, Inc.; Amec Foster Wheeler Energia S.L.U.; and Amec Foster Wheeler PLC, d/b/a Wood Group, PLC (collectively, "AFW" or "Respondents," and together with GRP, the "Parties"); and (2) to consolidate, pursuant to O.C.G.A. 9-9-6(e)-(f), arbitration of the Demand with the existing arbitration proceeding currently pending between GRP, MasTec Power Corporation, MasTec, Inc., (together, "MasTec") and Amec Foster Wheeler

Industrial Power Company, Inc. ("AFWIPC") (the "Existing Arbitration"), which has proceeded pursuant to this Court's previous February 12, 2021 Order in *GRP-Madison, LLC, et al. v. MasTec Power Corporation, et al.*, 21-cv-00009-CDL (M.D. Ga.) (Land, J.), attached as Ex. 2 to the Declaration of Charles S. Korschun.   In support of its Petition, GRP respectfully submits the attached Memorandum of Law (Exhibit A to the Petition), Declaration of Charles S. Korschun (Exhibit B to the Petition), Declaration of Carey Davis (Exhibit C to the Petition), Jurisdictional Statement (Exhibit D to the Petition) and Proposed Order (Exhibit E to the Petition).   GRP separately submits a Motion for Expedited Review of the Petition.   For its Petition, GRP alleges as follows:

## INTRODUCTION

1.     This is an action to compel AFW to arbitrate disputes between the Parties based on applicable contracts, in the manner most consistent with principles of fairness, judicial efficiency, recognition of arbitration, and contract interpretation under Georgia law.

2.     AFW has asserted that it is a beneficiary of the terms of a June 29, 2020 Settlement Agreement between GRP and MasTec Power Corporation (the "Settlement Agreement," attached as Ex. 1 to Davis Declaration), which includes a Dispute Resolution Procedure requiring arbitration of disputes related to the Settlement Agreement.   *See* November 22, 2022 Interim Award On Joinder and Consolidation ("Joinder Award"), attached as Ex. 3 to Korschun Declaration, at 6, 8; Settlement Agreement, Ex. 1 to Davis Decl. at Section 11.

3.     AFW actively participated in the negotiation of the terms of the Settlement Agreement in its role as the primary subcontractor to MasTec on work performed pursuant to July 28, 2017 Engineering, Procurement, and Construction contracts between GRP and MasTec (the

"EPCs"), at two biomass power plants for which GRP is the owner and MasTec the EPC Contractor (the "Plants").

4.    The Settlement Agreement was intended to resolve disputes regarding the design, procurement, and construction of plant components for which AFW was responsible pursuant to purchase order agreements with MasTec, and for which AFW provided warranties dictated by the terms of the EPCs.  *See* Article 14 of EPCs, attached as Ex. 5 to the Davis Declaration; Joinder Award, Ex. 3 to Korschun Decl. at 3.   The Dispute Resolution Procedure in the EPCs is incorporated as the "Disputes" procedure in the Settlement Agreement.  *See* Article 25 of EPCs ("Dispute Resolution Procedure") attached as Ex. 4 to Davis Declaration; Settlement Agreement, Ex. 1 to Davis Decl. at Section 16.

5.    The Settlement Agreement expressly names AFW as a participant and contains promises for AFW to perform certain work pursuant to the terms of the Settlement Agreement. For example, the Settlement Agreement references design modifications proposed by AFW, to be completed by AFW pursuant to testing by AFW referenced in the Settlement Agreement.  *See* Settlement Agreement, Ex. 1 to Davis Decl. at Section 4; "Madison Combustion Test with Dry Fuel dated March 02, 2020 ("March 2020 AFW Report"), attached as Ex. 2 to Davis Declaration. The Settlement Agreement further references a test procedure provided by AFW for testing to be completed by AFW.    *See* Settlement Agreement, Ex. 1 to Davis Decl. at Section 4; "Boiler Modification Test" procedure, attached as Ex. 3 to Davis Declaration ("AFW Test Procedure").

6.     GRP is currently engaged with both MasTec and AFW in the Existing Arbitration. GRP initiated the Existing Arbitration with claims against MasTec that include (1) rescission of the Settlement Agreement based on material breaches of the Settlement Agreement and material misrepresentations that induced GRP to enter the Settlement Agreement and (2) breach of the

EPCs; or, in the alternative, (3) breach of the Settlement Agreement. *See* November 5, 2020 GRP Demand for Arbitration ("Demand to MasTec"), attached as Ex. 4 to Korschun Declaration; May 3, 2021 GRP Position Statement ("GRP Position Statement"), attached as Ex. 5 to Korschun Declaration.). A substantial part of the facts underlying the claims in the Demand to MasTec involve AFW's work as subcontractor to MasTec, and MasTec's supervision of that work as EPC Contractor. *See* GRP Position Statement at 3, 5-7, 15, 17-19, 28-29.

7.     In two purchase orders for work as a subcontractor to MasTec to complete work included in the EPCs, AFW agreed "to be joined in and bound" by any dispute proceeding brought against MasTec by GRP, as Owner, that involves AFW's work or performance. Joinder Award at 4-5 (citing Section 36.6 of Purchase Order Nos. 1002-002 and 1003-003 (the "Purchase Orders")). Accordingly, MasTec demanded AFW's joinder and participation as a party to the Existing Arbitration pursuant to the terms of the Purchase Orders. Joinder Award at 3-4. AFW objected to MasTec's demand and refused to participate in the Existing Arbitration, but has since been compelled to be joined to defend MasTec's third-party claims in the Existing Arbitration by the Joinder Award, which was obtained by MasTec in a separate arbitration to resolve the joinder issue. *Id.* at 9-10.

8.     After MasTec successfully compelled the joinder of AFW as a party in the Existing Arbitration, MasTec submitted third-party claims against AFW in the Existing Arbitration. *See* MasTec's Third-Party Arbitration Demand Against Amec Foster Wheeler Industrial Power Company, Inc., submitted January 6, 2023 (the "MasTec Third-Party Demand"), attached as Ex. 6 to Korschun Declaration.

9.     Following submission of the MasTec Third-Party Demand, GRP served the separate Demand on AFW, asserting direct claims for (1) Negligent Design, (2) Negligent

Construction, (3) Professional Negligence;  (4) Fraudulent Inducement of a Contract (Rescission of the Settlement Agreement); (5) Material Nonperformance of a Contract (Rescission of the Settlement Agreement); (6) Breach of Contract; (7) Breach of Express Warranty; (8) Breach of Implied Warranty of Good Faith and Fair Dealing; and (9) Tortious Interference with Contract. *See* Ex. 1 to Korschun Decl.

10.     The GRP Demand further asserts that GRP's direct claims against AFW should be consolidated and decided in the Existing Arbitration, based on many factors by which Georgia courts have recognized that a non-signatory to an arbitration agreement may still be required to participate in an arbitration. *Id.* at 9.

11.     AFW has expressly refused arbitration of the claims in the GRP Demand, either as part of the Existing Arbitration or otherwise, stating "AFW's participation in the [Existing Arbitration] is limited solely to parameters set forth in the MasTec-AFW Purchase Orders and AFW objects to any attempt by GRP to compel AFW to arbitrate in any other capacity in this proceeding or expand AFW's participation in any way.  AFW intends to vigorously oppose any attempt by GRP to compel arbitration of its claims against AFW…"  February 1, 2023 "Response to January 18, 2023 Letter" ("February 1 Letter"), attached as Ex. 7 to Korschun Declaration.

12.     Although AFW is not a signatory to the Dispute Resolution Procedure, AFW is legally bound to defend the direct claims in the GRP Demand in arbitration according to Georgia contract law and principles of equitable estoppel, based on the many actions of AFW that support arbitration of the claims.

13.     Georgia law further supports consolidation of the GRP Demand to AFW into the Existing Arbitration based on recognized public policy of judicial efficiency and avoiding conflicting rulings.  *See* O.C.G.A. § 9-9-6.  The issues of fact and law in the GRP Demand to AFW

substantially overlap with those in the Existing Arbitration, and GRP and AFWIPC are already parties to the Existing Arbitration.

14.    Both the Georgia Arbitration Code and the Federal Arbitration Act further support the consolidation of the GRP Demand into the Existing Arbitration based on the recognition of the Existing Arbitration as a valid means of dispute resolution, as further recognized by this Court's Order directing the establishment of the Existing Arbitration in *GRP-Madison, LLC, et al. v. MasTec Power Corporation, et al.*, 21-cv-00009-CDL (M.D. Ga.) (Land, J.).  *See also See* O.C.G.A. § 9-9-3, 9-9-6; 9 U.S.C. § 1 *et seq.*

15.    GRP seeks an order pursuant to Section 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.* to compel AFW to arbitrate the claims in the GRP Demand against AFW.

16.    GRP further seeks an order joining and consolidating the claims in the GRP Demand into the Existing Arbitration pursuant to the Georgia Arbitration Code, O.C.G.A. 9-9-6(e), which permits the Court to consolidate arbitrations into a single proceeding.

## PARTIES

17.    Petitioner GRP-Madison, LLC is the Owner of a biomass power plant in Madison County, Georgia.  GRP-Madison, LLC is a limited liability company that is a citizen of Alabama based on the citizenship of its members.  GRP Borrower, LLC is the sole member and 100% owner of GRP-Madison, LLC.  GRP HoldCo, LLC is the sole member and 100% owner of GRP Borrower, LLC.  GRP Operating, LLC is the sole member and 100% owner of GRP HoldCo, LLC. Georgia Renewable Power, LLC is the sole member and 100% owner of GRP Operating, LLC. *See* Jurisdictional Statement, attached as Exhibit D to the Petition.

18.    Petitioner GRP-Franklin, LLC is the Owner of a biomass power plant in Franklin County, Georgia.  GRP-Franklin, LLC is a limited liability company that is a citizen of Alabama

based on the citizenship of its members.  GRP Borrower, LLC is the sole member and 100% owner of GRP-Franklin, LLC.  GRP HoldCo, LLC is the sole member and 100% owner of GRP Borrower, LLC.  GRP Operating, LLC is the sole member and 100% owner of GRP HoldCo, LLC. Georgia Renewable Power, LLC is the sole member and 100% owner of GRP Operating, LLC. *Id.*

19.     Petitioner Georgia Renewable Power, LLC is a limited liability company that is a citizen of Alabama based on the citizenship of its members.  Greenfuels Energy, LLC is the sole member and 100% owner of Georgia Renewable Power, LLC.  Raymon Bean, an individual who is a resident of Jefferson County, Alabama, is the sole member and 100% owner of Greenfuels, Energy, LLC.  *Id.*

20.     Upon information and belief, Respondent AFWIPC is a corporation that is incorporated in Delaware and has its principal place of business in Hampton, New Jersey. AFWIPC is a subcontractor to MasTec Power Corporation, the "EPC Contractor" for the biomass power plants owned by GRP-Madison, LLC and GRP-Franklin, LLC pursuant to the Purchase Orders pertaining to the GRP-Madison Plant and the GRP-Franklin Plants, by which AFWIPC contracted to perform certain work on the plants required by the EPCs.  AFWIPC also provided warranties to MasTec for its work pursuant to the Purchase Orders, and consistent with the EPCs.

21.     Upon information and belief, Respondent Amec Foster Wheeler USA Corporation is a corporation that is incorporated in Delaware and has its principal place of business in Houston, Texas.  Upon information and belief, Amec Foster Wheeler Corporation currently does business as Wood Group USA, Inc., a corporation that is also based in Houston, TX, following a merger of their respective corporate organizations.  Upon information and belief, Amec Foster Wheeler Corporation, d/b/a Wood Group USA, Inc. is a parent company of AFWIPC.

22.     Upon information and belief, Respondent Amec Foster Wheeler Energia, S.L.U. is a foreign company organized under the laws of Spain that has its headquarters and principal place of business in Madrid, Spain.  Amec Foster Wheeler Energia, S.L.U. contributed to the design and construction of the boilers at the GRP-Madison and GRP-Franklin plants to fulfill the purchase orders between AFWIPC and MasTec.  *See* Ex. 1 to Korschun Decl., at "Exhibit D."

23.     Upon information and belief, Respondent Amec Foster Wheeler, PLC, d/b/a Wood Group PLC is a foreign company organized under the laws of the United Kingdom with its headquarters in Aberdeen, Scotland, United Kingdom.  Upon information and belief, Amec Foster Wheeler, PLC, d/b/a Wood Group PLC is the corporate parent of the other respondents following a merger between Amec Foster Wheeler, PLC and Wood Group PLC in 2017.

## JURISDICTION AND VENUE

24.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because complete diversity of citizenship exists among the parties, and the amount in controversy exceeds $75,000.00, exclusive of interests and costs.  Petitioners are citizens of Alabama based on the ownership of their respective members as limited liability companies.  Respondents are citizens of Delaware, New Jersey, Texas, and foreign jurisdictions outside the United States based on their incorporation (where applicable) and principal places of business.  The GRP Demand seeks damages of at least $250,000,000.00.  Ex. 1 to Korschun Decl.  Petitioners have submitted a Jurisdictional Statement regarding their citizenship pursuant to Local Rule 87 and Federal Rule of Civil Procedure 7.1, attached as Exhibit D to the Petition.

25.     Venue is proper in the Middle District of Georgia under 28 U.S.C. § 1391(b)(2) because the binding arbitration agreement that Petitioners seek to compel dictates that the Existing Arbitration proceeding be held in Madison County, Georgia, and the claims at issue in the GRP

Demand to AFW concern agreements for engineering, construction, and procurement on projects in Madison County, Georgia and Franklin County, Georgia. Petitioners and Respondent AFWIPC are already parties to the Existing Arbitration located in Madison County, Georgia, and this Court previously decided a related Petition to Compel Arbitration and for a Preliminary Injunction and Temporary Restraining Order filed by Petitioners against MasTec in *GRP-Madison, LLC, et al. v. MasTec Power Corporation, et al.*, 21-cv-00009-CDL (M.D. Ga.) (Land, J.), resulting in a February 12, 2021 Order establishing the Existing Arbitration in which Respondents' participation is in dispute.

## FACTUAL ALLEGATIONS

I.    **AFW's Contractual Obligations for Work in the EPCs and Settlement Agreement**

26.    The EPCs require MasTec, as EPC Contractor, to be broadly responsible for completing the Plants' design and construction work as defined by the EPCs, overseeing and integrating the work of subcontractors and suppliers, and addressing issues subject to warranties required by the terms of the EPCs.

27.    AFW was (and continues to be) jointly responsible for most of the work at issue in GRP's Demand for Arbitration to MasTec based on subcontracts with MasTec to perform the work for the benefit of GRP. Specifically, AFWIPC entered into the two Purchase Orders to design and construct the boilers for the Plants, and was contractually responsible for other Plant components required by the EPCs such as boiler feedwater pumps and economizer tubes. *See* Joinder Award, Ex. 3 to Korschun Decl. at 1, 3. At least part of the design work was completed by Amec Foster Wheeler Energia S.L.U. *See* Ex. 1 to Korschun Decl. at 3, "Exhibit D".

28.    During commissioning, several issues were identified regarding performance of the Plants. GRP disputed testing conducted following construction and requested remediation of

outstanding issues.  Based on the problems affecting Plant performance, GRP did not agree to certify to Substantial Completion pursuant to the EPCs, withheld final payment, and asserted that additional liquidated damages were owed pursuant to the EPCs.  Ex. 5 to Korschun Decl. at 5.

29.    GRP also submitted a large list of warranty claims based on failures identified at the Plants following initial construction.  At the time of the Settlement Agreement, AFW was listed on the warranty register as the "warranty holder" responsible for many of the claims, including claims related to the Boilers, Boiler Feedwater Pumps, Secondary Air Fans, Sootblowers, and Economizer Tubes.  Ex. 1 to Davis Decl. at "Exhibit A," Madison Warranty Item Nos. 7, 9-10, 12, 15, 17, 20-22, 26, 37, 39, 41-42; Franklin Warranty Item Nos. 23-24, 29, 31, 38-39.

30.    AFW contributed to attempts to resolve issues with the Boiler design, including by conducting analysis in the March 2, 2020 AFW Report.  Davis Decl. Ex. 2.  AFW participated in negotiations between GRP and MasTec to resolve disputes over the failures and Substantial Completion of the Plants, and proposed modifications to GRP and MasTec to remediate the Boiler and Boiler Feedwater Pump problems.  *See* Ex. 1 to Davis Decl. at Sections 4, 9.

31.    AFW further contracted to perform Work pursuant to the terms of the proposed Settlement Agreement in separate settlement agreements with MasTec entered near the same time as the Settlement Agreement.  *See* Joinder Award, Ex. 3 to Korschun Decl. at 2-3, 5; MasTec Third-Party Demand, Ex. 5 to Korschun Decl. at 5.

32.    GRP and MasTec executed the Settlement Agreement on June 29, 2020.  The Settlement Agreement states that it is intended to resolve issues "related to the EPC Contracts and the Projects [that] include but are not limited to, facility feedstock compliance issues, boiler feedwater pump issues (including temperature issues, loose flinger rings, the extrusion of stationary wear rings, higher wear of the ARC valves, higher vibrations at low-operating loads,

and the issues referred to in GRP's letter of March 16, 2020…boiler refractory and heat transfer issues, boiler modifications, boiler design issues, SA fan bearing issues, Boiler Feedwater system piping modifications, punch list items including heat trace and insulation, missing groundings, cable tray covers, missing lighting, Modbus issues, pipe painting, missing outlets in the boiler building, lighting and outlets in heater bay area, lighting issues, [and] performance and emissions testing procedure issues…."  Ex. 1 to Davis Decl. at 1.  The Settlement Agreement includes "Mutual Releases" to be granted based on the work and confirmation procedures intended to resolve these issues.  *Id.* at Section 11.

33.     AFW's work was central to provisions regarding "Boiler Modifications" in the Settlement Agreement.  Section 4 of the Settlement Agreement states that Boiler modifications shall proceed at both the Franklin and Madison Projects "as proposed by Amec Foster Wheeler 'AFW'), the Boiler supplier, described in the report titled 'Madison Combustion Test with Dry Fuel dated March 02, 2020' for the fuel composition described in the report."  Ex. 1 to Davis Decl. at Section 4 (quotes in original).  Section 4 further states: "After completion of the Franklin and Madison Boiler modifications, a test (the 'Boiler Modification Test') will be performed to demonstrate that the boilers perform according to the Predicated Performance identified in the Boiler Modification Test procedure.  Predicted Performance shall be as defined in the Boiler Modification Test procedure prepared by AFW and shall include, but not be limited to, predicted boiler efficiency and steam output conditions.  AFW has submitted the Boiler Modification Test procedure."  *Id.*  Finally, if the Boiler modifications fail to produce the Predicted Performance output conditions, Section 4 of the Settlement Agreement dictates that MasTec "will cause AFW to perform any subsequent modifications necessary to produce the Predicted Performance output conditions…" *Id.*

34. Similarly, AFW's work was central to provisions regarding "Boiler Feedwater Pump Modifications" in the Settlement Agreement. Section 9 of the Settlement Agreement requires "work on modification to the Boiler Feedwater pumps for each Project pursuant to the proposal developed by AFW…" *Id.* at Section 9.

35. Section 5 of the Settlement Agreement states that "The Parties' warranty rights and obligations shall be as set forth in the EPC Contracts, except as modified by this paragraph," including all those listed in "Exhibit A" to the Settlement Agreement and those identified prior to a new Warranty Expiration Date of November 7, 2020. *Id.* at Section 5. Section 10 of the Settlement Agreement further specifies that the warranties listed in "Exhibit A" to the Settlement Agreement are those required pursuant to the terms of Article 14 "Warranties" of the EPC Contracts. *Id.* at Section 10; Ex. 3 to Davis Dec. at Article 14.5.3 ("Contractor shall obtain warranties from all Subcontractors that are consistent with the warranties required of Contractor under this Agreement and shall make Owner and Lender a third-party beneficiary of such warranties.").

## II.    **The Existing Arbitration**

### A. Claims in the Existing Arbitration Related to AFW's Work

36. On November 5, 2020, Petitioners submitted a Demand for Arbitration to MasTec. The Demand to MasTec references many issues connected to AFW's work on the Plants as MasTec's subcontractor. Among other things, GRP asserts in the Demand to MasTec that the Boilers and other aspects of the Plants were negligently designed, that the Boiler Modification Test and Boiler Feedwater Pump Modification procedures were compromised, and that Warranty Items

listed in Exhibit A of the Settlement Agreement had not been satisfied in a commercially reasonable time period.  *See* Ex. 4 to Korschun Decl. at 1-2.[1]

37.    Specifically, as part of its claims in the Existing Arbitration, GRP alleges that the Boilers at the Plants were improperly designed, driven by cost-cutting measures by MasTec and AFW as its subcontractor.  GRP alleges that the use of an uncommon prototype design made the Boilers unable to achieve proper superheat temperature control, and that the Boilers, as designed by AFW, could not run properly using fuel with moisture content specified in the EPCs.  *See* Ex. 5 to Korschun Decl. at 3, 13.

38.    As part of its claims in the Existing Arbitration, GRP further alleges that substandard and ill-fitting designs were selected for the Boiler Feedwater Pumps, again so MasTec and AFW, as its subcontractor, would save money.  These poor designs have caused repeated pump failures that have damaged plant performance in both the short- and long-term.  *Id.* at 15.

39.    GRP's allegations in the Existing Arbitration detail how the design deficiencies in the Boiler and Boiler Feedwater Pumps required modifications after defects were identified during testing following initial construction of the Plants.  *Id.* at 4, 5-6, 14-15.  The modifications to be completed were proposed by AFW and included in the Settlement Agreement.  *Id.* at 5, 15; *see also* Davis Decl. Ex. 1 at Sections 4, 9.

40.    GRP further alleges in the Existing Arbitration that additional defects identified upon construction of the Plants triggered warranty obligations under the EPCs, which had required MasTec to obtain necessary warranties from its subcontractors, such as AFW.  GRP's allegations in the Existing Arbitration detail how outstanding warranty obligations, including those identifying

---

[1] The Demand for Arbitration against MasTec was dated and sent November 5, 2020 and delivered to MasTec via overnight mail on November 6, 2020.

AFW as the responsible party, were carried forward in the Settlement Agreement, but that MasTec and AFW have continued to breach these warranty obligations following execution of the Settlement Agreement, including by declaring warranty items improperly "closed" when material issues remained. *See* Ex. 5 to Korschun Decl. at 4-6, 11, 17-18. *See also* Davis Decl. at 1, Section 5, 10, and "Exhibit A."

41.     Part of GRP's allegations in the Existing Arbitration regarding breaches of warranties are allegations that MasTec has not confirmed that AFW performed adequate QA/QC on work for which MasTec and AFW were responsible, and that MasTec and AFW have not cooperated to provide documentation requested by GRP or to implement proper procedures to adequately review identified defects in plant components such as the economizer tubes. *See* Ex. 5 to Korschun Decl. at 10-11, 16-17.

42.     GRP's claims in the Existing Arbitration include allegations that the Boiler Modification Test prepared by AFW was violated based on AFW's own improper actions in conducting an alleged "test," manipulating test data, and presenting its findings to an alleged "third-party" engineer *ex parte* and unbeknownst to GRP, in order to influence the engineer's determinations. *Id.* at 18-19.

43.     Similarly, GRP's claims in the Existing Arbitration include claims that the Boiler Feedwater Pump Modification Procedure was corrupted due to improper communications with the engineer and AFW's supplier to discuss modification to the exclusion of GRP. *Id*. at 19-20.

44.     GRP further alleges in the Existing Arbitration that modifications to the Boilers that AFW proposed and claimed to implement were not sufficient and did not adequately address problems with AFW's original design. *Id.* at 14.

45.     GRP further alleges in the Existing Arbitration that modifications to the Boiler Feedwater Pumps that AFW proposed and claimed to implement were not sufficient and did not adequately address problems with AFW's original design. *Id.* at 15.

46.     GRP alleges in the Existing Arbitration that the breaches of the Boiler and Boiler Feedwater Pump Modifications in which AFW took part, as well as complete failure to reasonably cooperate to complete warranty obligations, constitute material nonperformance that justifies rescission of the Settlement Agreement and voiding of any releases granted in the Settlement Agreement, including releases to MasTec's subcontractors to which AFW has claimed the benefit. *Id.* at 21.

47.     GRP also alleges in the Existing Arbitration that the Settlement Agreement may be rescinded because it was induced through material misrepresentations and omissions, including regarding the efficacy of the modifications proposed by AFW and the resolution of warranty items for which AFW was responsible.  *Id.* at 22.

**B.  Procedural History of the Existing Arbitration**

48.     The Existing Arbitration is being conducted pursuant to the arbitration provision contained in Article 25 (the "Dispute Resolution Procedure") of the EPCs.  The EPCs concern the design and construction of two biomass power facilities in Madison and Franklin Counties in Georgia.  Article 25 is identical between the respective EPCs.  *See* Ex. 4 to Davis Decl.

49.     Article 25.1 of the Dispute Resolution Procedure applies the Procedure to "Any claim or dispute between the Owner and Contractor that arises under or in any way relates to this Agreement or the Project, including without limitation requests, demands, submissions, disputes or claims for money, [or] additional time or other relief…"  *Id.*

15

50.    The arbitration provision in the Dispute Resolution Procedure is also incorporated into the "Settlement Agreement.  Article 16 of the Settlement Agreement states that "Any and all disputes between the Parties arising out of or related to this Agreement or the breach thereof shall be resolved by binding arbitration using the expedited arbitration procedures set forth in the EPC Contracts.  Judgment on any award issued in accordance with this paragraph may be entered in any court of competent jurisdiction."  Davis Decl. Ex. 1.

51.    Both the Settlement Agreement and the EPCs state that the agreements "shall be governed by and construed and enforced in accordance with the internal laws of the State of Georgia, without regard to its principles of conflict of laws that may provide for the application of the laws of another jurisdiction."  Ex. 1 to Davis Decl. at Section 15.  The Dispute Resolution Procedure states that any arbitration taking place pursuant to the procedure shall be held in Madison County, Georgia.  Ex. 4 to Davis Decl. at 25.3.1(a)(viii).

52.    On January 28, 2021, GRP filed an action in the United States District Court for the Middle District of Georgia to compel MasTec's participation in the Existing Arbitration pursuant to GRP's November 5, 2020 Demand, and to enjoin a collateral arbitration demand filed by MasTec on January 11, 2021, which sought to apply the same Dispute Resolution Procedure. Pursuant to an Order issued February 12, 2021, an arbitration panel was selected pursuant to the November 5, 2020 Demand in April 2021 (the "Panel").  *See* February 12, 2021 Order, Ex. 2 to Korschun Decl.  The Panel has presided over the dispute between GRP and MasTec thereafter.

53.    In submissions made in the Existing Arbitration, MasTec represented that it had sent a demand to AFWIPC requesting AFWIPC's participation in the Existing Arbitration, and, after AFWIPC refused, submitted a separate arbitration demand seeking to compel AFWIPC's joinder into the Existing Arbitration.  Both GRP and MasTec represented to the Panel in the

Existing Arbitration that AFW should appropriately be joined in the Existing Arbitration based on its central role in the facts underlying the Existing Arbitration and its potential liability related to the claims asserted by GRP in the Existing Arbitration, in addition to contract terms between MasTec and AFWIPC requiring joinder and participation by AFWIPC.

54.    GRP and MasTec confirmed their agreement that AFW is a party that is properly joined in the Existing Arbitration in a stipulation and Proposed "Order for Joinder of Wood PLC f/k/a Amec Foster Wheeler Industrial Power Company, Inc," which was submitted to the Panel on August 24, 2021 (the "Joinder Stipulation").  The Joinder Stipulation referenced GRP's intention to assert direct claims against AFW when AFW was joined as a party to the Existing Arbitration. The Panel has not entered or commented on the Proposed Joinder Stipulation.  *See* Joinder Stipulation, attached as Ex. 8 to the Korschun Declaration.

55.    On June 28, 2021, GRP and MasTec submitted briefing in the Existing Arbitration on issues directed to the Panel by the February 12, 2021 Order, specifically: (1) whether GRP or MasTec's Demand for Arbitration was properly "first-filed," and (2) whether the Existing Arbitration would be administered as an *ad hoc* proceeding or by the American Arbitration Association.  The Panel issued a decision on August 31, 2021 holding that "(1) a decision on the first-filed issue is reserved to a later date, after [AFWIPC] is joined as a party and after the record can be developed to allow the Panel to better analyze the legal and factual issues surrounding the first-filed issue; and (2) [the Existing Arbitration] will be administered as an *ad* hoc proceeding by the Panel, rather than by the AAA."  August 31, 2021 Panel Decision, attached as Ex. 9 to Korschun Declaration.

56.     In a December 17, 2021 Decision and Order, the Panel held that a motion filed by MasTec regarding "Enforceability of the Settlement Agreement" was premature and denied MasTec's motion without prejudice.

57.     GRP and MasTec have engaged in discovery following the Panel's December 17, 2021 Decision and Order, but AFW has not taken part in discovery as a result of its continued resistance to participating in the Existing Arbitration.   Based on anticipation that MasTec's separate action to compel AFW would be resolved in the near term, and agreement that AFW's participation was material to the further progression of discovery, the Panel entered a stipulated order submitted by GRP and MasTec on October 16, 2022 staying all deadlines pending an order on the status of a Motion for Joinder / Consolidation submitted by MasTec against AFW in the MasTec-AFW Arbitration (the October 16, 2022 Order), attached as Ex. 10 to the Korschun Declaration.

III.    **AFW Resists Joinder to Existing Arbitration Based on the Settlement Agreement**

58.     Section 36 of the Purchase Orders states that AFWIPC agrees "to be joined in and bound" by any dispute proceeding between MasTec and GRP that involves AFW's work or performance. *See* Joinder Award, Ex. 3 to Korschun Decl. at 4-5; MasTec Third-Party Demand, Ex. 5 to Korschun Decl at 3-4.

59.     Pursuant to Section 36 of the Purchase Orders, MasTec demanded AFW's joinder and participation as a party to the Existing Arbitration.  *See* Joinder Award, Ex. 3 to Korschun Decl. at 3-4.  The Purchase Orders also contain separate provisions for disputes between MasTec and AFWIPC, some of which MasTec relied upon when seeking to compel joinder of AFWIPC. MasTec reported to GRP and the Panel at the commencement of the Existing Dispute that it had requested that the American Arbitration Association appoint an "R-7 arbitrator" (pursuant to AAA

Construction Industry Rule R-7) to whom MasTec sought to compel the joinder of AFW as a party to the Existing Arbitration. *See* August 31, 2021 Panel Decision, Ex. 9 to Korschun Decl. at 9, n.3.

60.    AFW objected to MasTec's demand and refused to participate in the Existing Arbitration.  AFW further objected to jurisdiction of the R-7 Arbitrator on procedural grounds. The R-7 Arbitrator declined to exercise jurisdiction but noted, "[t]here does not seem to be much doubt that [AFWIPC] agreed by [the provision in the Purchase Orders] to being joined in and bound by cases such as the GRP Arbitration since according to MasTec at least a portion of the allegations in that case center on [AFWIPC's] 'work or performance' under the Purchase Orders." Joinder Award, Ex. 3 to Korschun Decl. at 4 (citing Order of the R-7 Arbitrator).  Following the Order of the R-7 Arbitrator, MasTec initiated an *ad hoc* arbitration on February 7, 2022, asserting claims for breach of the Purchase Orders, indemnity, and contingent rescission.  As part of the separate arbitration against AFW, MasTec sought an order to compel AFW "to join in and be bound by the results of the Existing Arbitration to the extent that GRP's claims asserted [] involve the performance of AFW." MasTec Third-Party Demand, Ex. 5 to Korschun Decl. at 2.

61.    AFW argued in its filings objecting to MasTec's motion to compel joinder that, despite the language in the Purchase Orders, it should not be required to participate in the Existing Arbitration until the Panel in the Existing Arbitration determined "the scope of GRP's claims in light of the Settlement Agreement," based on AFW's claim to benefit from releases in the Settlement Agreement, which include language applying releases on behalf of the subcontractors of MasTec and GRP:

> [T]he Parties on their own behalf and on behalf of each of their respective owners, employees, officers, partners, subcontractors, suppliers, shareholders, members, lenders, parents and/or subsidiaries hereby release and forever discharge each other and all of their respective owners, employees, officers, partners, subcontractors, suppliers, shareholders, members, lenders, parents and/or subsidiaries from and against any and all claims, demands, or causes of action of every type and character,

whether known or unknown whether identified as Issues in this Agreement or otherwise, past, present, or future, arising out of or related to the Projects or the EPC Contracts.

Joinder Award, Ex. 3 to Korschun Decl. at 6; Settlement Agreement at Section 11:

62.     Although AFW had previously argued that the R-7 Arbitrator did not have jurisdiction over the dispute with MasTec, AFW also argued in the MasTec-AFW arbitration that the new *ad hoc* panel in that proceeding also did not have jurisdiction according to the terms of its arbitration agreements in the Purchase Orders with MasTec because joinder could only be ordered by a R-7 arbitrator appointed by the AAA. *See* Joinder Award, Ex. 3 to Korschun Decl. at 6.

63.     While the MasTec arbitration to compel joinder of AFW was pending, GRP also wrote to AFW on June 1, 2022 notifying AFW of GRP's intent to assert direct claims against AFW and requesting a meeting pursuant to the Dispute Resolution Procedure in the Settlement Agreement and EPCs. ("June 1 Submission"), attached as Ex. 11 to Korschun Declaration. GRP attached a prospective arbitration demand against AFW and stated its intent to assert the direct claims in the Existing Arbitration, together with MasTec's third-party claims against AFW, if the Dispute Resolution Procedure resulted in arbitration of the direct claims. GRP submitted its correspondence and prospective demand to the Panel, also on June 1, 2022, to inform the Panel of GRP's intent to assert direct claims against AFW and to request that the Panel issue subpoenas to AFW witnesses given the importance of AFW to ongoing discovery and in consideration of pending discovery deadlines. *See* Ex. 11. to Korschun Decl.

64.     GRP asserted in both the June 1, 2022 correspondence and the Prospective Demand that the dispute over GRP's direct claims against AFW should be joined and consolidated in the Existing Arbitration because: "(1) GRP's claims against AFW arise, in part, out of the terms of the Agreements, and AFW's engagement by MasTec pursuant to the terms of the Agreements; (2) AFW was a contributor in the negotiation, execution, and alleged performance of the Settlement

Agreement, and is referenced as a participant in the terms of the Settlement Agreement; (3) AFW's conduct was substantially interdependent with the actions by MasTec that give rise to claims currently at issue in the pending arbitration; and (4) AFW has agreed, pursuant to Section 36.6 of the September 7, 2017 Purchase Order No. 1003-002 between AFW and MasTec (the "Purchase Order"), 'to be joined in and bound by any dispute proceeding between MasTec and GRP that involves AFW's work or performance.'" *Id.* at 2.

65.    AFW responded to GRP through counsel on June 8, 2022.  In AFW's June 8, 2022 correspondence, AFW refused to participate in the Dispute Resolution Procedure.  AFW further stated that AFW could not be compelled to defend GRP's claims in the arbitration because GRP does not have a signed written agreement to arbitrate the claims with AFW. *See* "June 8, 2022 AFW Letter," attached as Ex. 12 to the Korschun Declaration.

66.    Although GRP had prepared its Demand to AFW, and the Panel issued subpoenas to AFW requested by GRP, GRP elected to reserve submission of the demand or subpoenas to AFW pending resolution of MasTec's separate arbitration and motion to compel joinder of AFW, so that claims and discovery could be pursued against AFW more efficiently as a party in the Existing Arbitration.

67.    On November 22, 2022, the separate *ad hoc* arbitration panel established to determine MasTec's claims against AFW issued the Joinder Award, which required "the joinder of AFWIPC to the GRP/MasTec arbitration."  Joinder Award, Ex. 3 to Korschun Decl. at 9.

68.    The Joinder Award further stated: "The joinder language in the Purchase Orders is unambiguous and clear:  [AFWIPC] agreed to be joined in any dispute proceeding between MasTec and GRP that involved [AFWIPC's] work and/or performance." *Id.* at 8.

69.     The Joinder Award further held: "The arbitration Panel in the GRP Arbitration is fully capable of determining the extent to which the claims overlap and the extent to which [AFWIPC] has defenses or position [sic] that differ from those of MasTec.  Accordingly, [AFWIPC] must be joined in the GRP Arbitration based on its contractual representation in the Purchase Orders.  On review, the issues in [the MasTec-AFW] Arbitration and those in the GRP Arbitration have material overlap, and the dispute in the GRP Arbitration 'involves' the work of [AFWIPC] as contemplated by the parties' arbitration agreement."  The Joinder award further noted that, although AFWIPC had earlier objected to the jurisdiction of the R-7 Arbitrator, AFWIPC inconsistently later argued that the subsequent *ad hoc* Panel also did not have, because the rules governing the dispute required determination of joinder by an R-7 Arbitrator.  *Id.*

70.     Following the Joinder Award, on January 6, 2023, MasTec submitted a Third-Party Arbitration Demand against AFWIPC alleging claims for: (1) Breach of the Purchase Orders by AFW; (2) Indemnity of MasTec by AFW; and (3) Contingent Rescission of the [MasTec-]AFW Settlement Agreements.  *See* Ex. 5 to Korschun Decl. at 6-8.  As exhibits to its submission, MasTec attached the Joinder Award and Purchase Orders as exhibits.

71.     Pursuant to the Joinder Award and the MasTec Third-Party Demand, AFWIPC is currently a party to the Existing Arbitration.

IV.     **GRP's Arbitration Demand for Direct Claims Against AFW**

72.     Following the Joinder Award and submission of MasTec's Third-Party Demand against AFWIPC, GRP conferred with AFW and again requested that AFW consent to GRP's claims in the Existing Arbitration.  When AFW did not consent, GRP formally submitted its demand for direct claims against AFW on January 18, 2023.  The January 18, 2023 GRP Demand

Against AFW is materially the same as the prospective arbitration demand sent on June 1, 2022. *See* Ex. 1 to Korschun Decl.

73.    The GRP Demand Against AFW alleges that AFW is "jointly and severally liable with MasTec for the full costs to replace the well-functioning Plants which GRP purchased through the EPCs and then sought to confirm through the procedures and other obligations in the Settlement Agreement." *Id.*

74.    The GRP Demand Against AFW includes many allegations that AFW took active part in, and is jointly responsible for, many of the breaches, acts of negligence, and other actions alleged by GRP to give rise to liability against MasTec in the Existing Arbitration.  For example, GRP alleges that as the primary engineering subcontractor to MasTec, AFW designed the Boilers and selected the Boiler Feedwater Pumps using unsuitable designs and did not conduct appropriate QA/QC of its own suppliers and vendors, which caused the problems experienced at the Plants that led to GRP withholding final payment and refusing to certify Substantial Completion of the Plants. *Id.*

75.    The GRP Demand Against AFW alleges that AFW took part in the misrepresentations and omissions by which GRP claims to have been induced to enter into the Settlement Agreement and alleges claims for rescission of the Settlement Agreement. *Id.*

76.    The GRP Demand Against AFW alleges that AFW was instrumental in the material nonperformance of the Settlement Agreement by which GRP alleges a claim for rescission of the Settlement Agreement.  For example, GRP alleges that AFW violated its own Boiler Modification Test procedure by conducting and manipulating the "test" without GRP's knowledge and improperly presenting a test report with its findings to be confirmed by a "third-party" engineer well before any such information was provided to GRP.  The GRP Demand to AFW further alleges

that AFW also improperly communicated *ex parte* with the "third-party" engineer designated to confirm that AFW's proposed modifications for the Boiler Feedwater Pumps were successful, but hid these communications and critical comments about the modifications by the supplier of the Pumps from GRP.  GRP further alleges that AFW withheld information applicable to completion of warranty obligations carried forward in the Settlement Agreement, refused to cooperate with GRP to properly or timely complete warranty obligations, and claimed that warranty issues had been "closed" without evidence.  *Id.*

77.     Among its specific causes of action against AFW, the GRP Demand to AFW alleges causes of action arising out of the contracts containing the Dispute Resolution Procedure. These include claims for Fraudulent Inducement of a Contract (Rescission of the Settlement Agreement); Material Nonperformance of a Contract (Rescission of the Settlement Agreement); Breach of Contract (for both the EPCs and the Settlement Agreement); Breach of Express Warranty (pursuant to warranties provided pursuant to Article 14 of the EPCs and continued pursuant to Sections 5 and 10 of the Settlement Agreement); Breach of Implied Warranty of Good Faith and Fair Dealing, and Tortious Interference with Contract (for both the EPCs and the Settlement Agreement).  *Id.*

78.     The GRP Demand asserts that, in addition to AFWIPC, Amec Foster Wheeler USA Corporation, d/b/a Wood Group USA, Inc.; Amec Foster Wheeler Energia S.L.U.; and Amec Foster Wheeler PLC, d/b/a Wood Group, PLC are jointly and severally liable for GRP's claims, either because they exercised direct control and influence over the actions of AFWIPC or because they actively participated in providing the work performed for the Plants.  *Id.*

79.    The GRP Demand names the Existing Arbitration as the proper venue for the GRP Demand to AFW and demands that the GRP Demand to AFW be consolidated into the Existing Arbitration. *Id.*

80.    In its correspondence accompanying its Demand to AFW, GRP again described its intent to consolidate its direct claims against AFW in the Existing Arbitration, particularly given that AFWIPC had been joined as a party pursuant to the Joinder Award and MasTec's Third-Party Demand. GRP further cited authority for consolidation of arbitration against a non-signatory to the arbitration agreement based on widely recognized principles of equitable estoppel and contract law. *Id.* at 2-3.

81.    GRP's letter attaching the Demand further addressed AFW's objections to including corporate affiliate parties other than AFWIPC by attaching evidence of direct participation by affiliate respondents other than AFWIPC in the work performed by AFW pursuant to the Purchase Orders and Settlement Agreement. *Id.* at 2-3, "Exhibits B-D."

82.    On February 1, 2023, counsel for AFW responded to the GRP Demand to AFW in correspondence that "objects to any attempt by GRP to compel AFW to arbitrate in any other capacity in this proceeding or expand AFW's participation in any way." The February 1, 2023 Letter states that "AFW intends to vigorously oppose any attempt by GRP to compel arbitration of its claims against AFW…" The February 1, 2023 Letter does not address AFW's claim to the benefit of the releases in the Settlement Agreement or acknowledge precedent under Georgia law for compelling a non-signatory of an arbitration agreement to participate in arbitration. *See* Ex. 7 to Korschun Decl.

## V.    Joinder and Consolidation of the GRP Demand to AFW in the Existing Arbitration

83.    As described further in the Memorandum of Law attached as Exhibit A to this Petition, Georgia Law requires AFW to arbitrate pursuant to the Dispute Resolution Procedure based on its actions and obligations described above.

84.    AFW should be compelled to arbitrate GRP's claims because (1) it has claimed the direct benefits of the Settlement Agreement that contains the Dispute Resolution Procedure mandating arbitration; (2) AFW signed agreements in which it promised to arbitrate claims arising out of its work on the GRP Plants or to otherwise fulfill the obligations of contracts containing the arbitration provision; (3) GRP's claims against AFW arise directly out of duties of AFW to satisfy agreements containing the Dispute Resolution Procedure, which directly reference the contributions of AFW; and (4) AFW's conduct was and is substantially interdependent with MasTec, including in its actions to induce and then materially breach the Settlement Agreement and the underlying EPCs.

85.    The arbitration of GRP's claims against AFW should be consolidated in the Existing Arbitration.  Consolidation of arbitration against AFW into the Existing Arbitration is favored under O.C.G.A. §9-9-6(e), because (1) GRP and AFWIPC are already parties to the Existing Arbitration; (2) the disputes in the GRP Demand Against AFW all arise from the same transaction or series of related transactions as the disputes at issue in the Existing Arbitration; and (3) GRP's claims against AFW involve substantially the same common issues of law and fact, which would create the possibility of conflicting rulings if the disputes are not consolidated.

86.    Consolidation of the GRP Demand in the Existing Arbitration is in the public interest.  Consolidation in the Existing Arbitration will prevent the waste of judicial resources that would occur by forcing GRP to initiate a duplicate proceeding in the court system, or to waste resources of the parties by duplicating the same dispute into multiple arbitration proceedings.

Consolidation will also prevent the possibility of inconsistent rulings if GRP's claims against MasTec and AFW proceed separately on the same issues of law and fact. Absent consolidation, the same discovery record (and any accompanying disputes) and arguments regarding the agreements at issue will need to be heard all over again (and, if GRP's claims against AFW are not arbitrated, this inefficient process would take place in the court system). Such a process would be extremely impractical when this dispute has already progressed for two years and will continue to take place in the Existing Arbitration, where AFW must already participate and defend claims regarding its responsibility as a party pursuant to the Joinder Award.

## CONSIDERATIONS SUPPORTING EXPEDITED REVIEW

87.     As described further in GRP's Motion for Expedited Review accompanying this Petition, expedited review is appropriate because the Existing Arbitration is largely stayed pending resolution of issues concerning the participation of AFW, over two years after it was first initiated.

88.     The necessity of AFW's participation was recognized by the parties and the Panel at the outset of the Existing Arbitration, but AFW's absence has already caused delays and inefficiencies in completing the record through discovery.

89.     The dispute over AFW's arbitration of the claims in the GRP Demand is not based on any genuine disputes of fact, but on the question of whether AFW can be compelled to arbitrate despite not being an express signatory to the agreements underlying the Existing Arbitration.

90.     Compelling AFW to arbitrate in the Existing Arbitration does not require any novel or extended legal interpretation, but is instead grounded in well-established legal precedent under Georgia law requiring parties to arbitrate based on principles such as equitable estoppel, waiver, and incorporation by reference.

91.     Delays regarding AFW's joinder were caused by AFW unjustifiably refusing joinder despite express contract language by which AFW agreed "to be joined in and bound" by a

proceeding such as the Existing Arbitration. AFW further delayed resolution of its joinder pursuant to the third-party demand by MasTec by taking conflicting positions regarding the jurisdiction of an R-7 Arbitrator to determine this issue.

92.     AFW's refusal to resolve GRP's direct claims in the Existing Arbitration is another unjustified obstruction given that AFW has claimed the benefits of the releases in the Settlement Agreement containing the same arbitration clause underlying the Existing Arbitration.

93.     Further delays in the joinder and consolidation of claims against AFW are causing ongoing prejudice to GRP. Discovery on GRP's claims against MasTec cannot properly be completed without obtaining relevant documents from AFW, nor can necessary depositions take place without AFW's full participation. Uncertainty regarding AFW's role is likely to create confusion that may affect rulings on the scope of discovery and participation required of AFW. The Panel has already reserve ruling on threshold issues pending AFW's participation, and AFW's instrumentality to facts surrounding the Settlement Agreement prevents final adjudication on GRP's claims related to the Settlement Agreement, absent a ruling on AFW's role and the presence of claims directed to AFW as a respondent.

## PRAYER FOR RELIEF

**WHEREFORE**, Petitioners respectfully request that the Court:

94.     Issue an Order, pursuant to Section 4 of the Federal Arbitration Act, compelling AFW to arbitrate the GRP Demand to AFW pursuant to the Dispute Resolution Procedures in the Settlement Agreement and EPCs, in the forum elected by GRP in the GRP Demand to AFW.

95.     Issue an Order, pursuant to Georgia Arbitration Code, O.C.G.A. 9-9-6(e)-(f), consolidating the GRP Demand in the Existing Arbitration, and joining all of the AFW parties in

the Existing Arbitration to resolve the claims in the GRP Demand to AFW, in addition to those in

the MasTec Third-Party Demand to which AFWIPC is already a party.

96.     Grant any other relief in favor of GRP that the Court deems just and proper.

Dated: March 21, 2023

Respectfully submitted,


  /s/ J. Timothy McDonald
THOMPSON HINE LLP
J. Timothy McDonald
Tim.mcdonald@thompsonhine.com
GA Bar No. 489420
Two Alliance Center
3560 Lenox Road NE, Suite 1600
Atlanta, GA 30326-4266
(404) 407-3623

GIBBONS, P.C.
*Peter J. Torcicollo
*Damian V. Santomauro
*Charles S. Korschun
*Andrew J. Marino
One Gateway Center
Newark, New Jersey 07102
(973) 596-4500

*Attorneys for Petitioners*
*GRP-Madison, LLC; GRP-Franklin, LLC;*
*and Georgia Renewable Power, LLC*

**pro hac vice* application pending